| 4 | 558 |
| 125 | 474 |

No. 65.—Jacob G. McWhorter, plaintiff in error, vs. Wright, Nichols & Co. defendants.

[1.] A covenant by the surety, to pay certain debts of the grantor, his principal, is a valuable consideration, and sufficient to support an absolute conveyance of negroes and other property against the creditors of the grantor.

[2.] An insolvent debtor may, by the laws of Georgia, give a preference in a great variety of ways to one creditor, to the exclusion of others, provided it be done with good faith.

Certiorari, from Richmond Superior Court, decided by Judge Holt, September Term, 1848.

On the 7th May, 1847, John T. Hungerford, of the city of Augusta, being in insolvent circumstances, executed the following instrument:

"State of Georgia, Richmond County.

Know all men by these presents, that I, John T. Hungerford, of the city of Augusta, in said county and State, have, for value received, bargained, sold, and delivered, and by these presents do bargain, sell and deliver, unto Jacob G. McWhorter, of the same place, a certain slave named Yancey, a boy about ten years of age, and all my stock in trade, of what kind soever the same may be, consisting principally of harness and harness materials,

saddles, bridles, and saddle materials, coach bindings, trimmings, &c. &c. on the premises now occupied by me, on the north side of Broad Street, as a store, and also all the counters, desks, show-cases, shelves and other furniture appertaining thereto: *To have and to hold* the same to him, his executors, and assigns, to his and their own proper use and benefit forever. And I, the said John T. all and singular, the above mentioned property, unto the said Jacob G. McWhorter, against the lawful claims of all persons whomsoever, shall and will warrant and forever defend. In testimony whereof, I have hereunto set my hand and seal, this 7th May, 1847.          JOHN T. HUNGERFORD, [L. S.]

Signed, sealed and delivered in the presence of

HENRY H. CUMMING, NOT. PUB. R. C.

On the same day Jacob G. McWhorter executed the following instrument :

"STATE OF GEORGIA, RICHMOND COUNTY.

Know all men by these presents, that I, Jacob G. McWhorter, of the city of Augusta, in said county and State, am held and firmly bound unto John T. Hungerford, of the same place, in the just and full sum of five thousand dollars, lawful money of the United States of America, for the true payment of which to the said John T. Hungerford, his heirs, executors, administrators or assigns, I bind myself, my heirs, executors and administrators, jointly and severally, firmly by these presents, sealed with my seal, and dated this 7th day of May, in the year of our Lord, 1847.

The condition of the foregoing obligation is such that, whereas the above bound Jacob G. McWhorter, who is indorser for the accommodation of the said John T. Hungerford, of the following promissory notes, made by him, the said John T., to wit: one note for seven hundred and sixty dollars, dated 8th August, 1845, payable sixteen months from the first of October of the same year ; one of like amount and date, payable 20 months from the said first of October ; one for four hundred and fifty-six dollars and ninety-eight cents, ($456 98) dated 30th June, 1846, and payable on 15th January, 1847, (which is entitled to the following credits, viz : $34 75 on 16th February, 1847, and $230 91 on the 19th of the same month ;) one for two hundred and forty-nine dollars. dated 10th October, 1846, and payable eight months after date ; and of two other promissory notes, both bearing date 20th Jan. 1847, each for the sum of $200, and payable respec-

tively at sixty and ninety days after date, has, for and in considera-
tion of the sale and delivery to him, by the said John T. of a cer-
tain slave named Yancey, a boy about ten years of age, and of
his entire stock in trade, and other things, agreed to pay off and
discharge, all and singular the above mentioned promissory notes,
so that the said John T. shall be wholly relieved and discharged
from all liability on account of the same.   Now, if the said Ja-
cob G. McWhorter shall, well and truly, according to the true
intent and meaning of the agreement aforesaid, pay, or cause to
be paid, the said several promissory notes, so that the said John
T. his heirs, executors, and administrators, shall be wholly re-
lieved and discharged from all liability on account of the same,
then this obligation to be null and void; else, to remain in full
force and virtue.

Test, HENRY H. CUMMING,    }    J. G. McWHORTER. [L. s.]
   Notary Public, R. C.    }

On the 2d day of June, 1847, the defendants in error recovered
a judgment in the Court of Common Pleas, against said Hunger-
ford, and caused the *fi. fa.* issued thereon, to be levied on the
property conveyed to McWhorter.   McWhorter interposed his
claim, and on the trial in the Court of Common Pleas of the city
of Augusta, the presiding Judge charged the jury that the sale
to McWhorter, under the Act of 1818, was *fraudulent and void.*
A writ of certiorari was granted by the Judge of the Superior
Court of Richmond county.   And on the hearing, the decision of
the Common Pleas was affirmed.   To which decision of the Su-
perior Court, exceptions were filed and errors assigned.

W. T. GOULD and H. H. CUMMING, for plaintiff in error.

A. J. MILLER, for defendants.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] On the 7th day of May, 1847, Jno. T. Hungerford, an insol-
vent debtor, in consideration that Jacob G. McWhorter would
discharge sundry promissory notes, some due, and others still run-
ning to maturity, on which the said Hungerford was maker, and
the said McWhorter an accommodation indorser, conveyed to
McWhorter a negro boy by the name of Yancey, about ten years

old, his stock in trade, consisting of saddlery, &c. &c. Wright, Nichols & Co., another of the creditors of Hungerford, obtained judgment, and levied their execution on this property, which was claimed by McWhorter. The Circuit Court on the trial below, decided that the bill of sale to McWhorter was fraudulent and void, under the Act of 1818. Exception was taken to this judgment, and it becomes our duty to affirm or reverse it.

The Act of 1818 provides, " That any person or persons, unable to pay his, her or their debts, who shall, at any time hereafter, make any assignment or transfer of real or personal property, stock in trade, debts, dues or demands, *in trust* to any person or persons, in satisfaction or payment of any debt or demand, or in part thereof, for the use and benefit of his, her, or their creditor or creditors, for the use and benefit of any other person or persons, by which any creditor of the said debtor shall or may be excluded from an equal share or portion of the estate so assigned or transferred, such assignment, transfer, deed or conveyance, shall be null and void, and considered in law and equity as fraudulent against creditors. *Provided, nevertheless*, that nothing contained in this Act shall prevent any person or persons in debt, from *bona fide* and absolutely selling and disposing of any part or the whole of his, her or their estate, so the same be free from any trust, for the benefit of the seller, or any person or persons appointed by him, her, or them." *Prince's Digest*, 164, 5.

The only difference between this case and that of *Eastman, et al. vs. McCalpin*, 1 *Kelly*, 157, is, that in the latter, the outstanding debts of the vendor, were taken up and delivered to him by the purchaser, at the time the trade was consummated. In principle, this can constitute no just distinction. A money consideration is not indispensable to support a contract. A covenant to perform personal services for the grantor, has been held a valuable consideration, and sufficient to support a deed of conveyance. *Hame vs. Warnack*, 4 *Bibb*, 234. *Young vs. Ringoes*, 1 *Monroe*, 30. So, the bond of A to pay the outstanding debt of B, is good consideration for a deed of conveyance. Nay, more ; it is well settled that the liabilities of sureties are a good consideration for a conveyance. 6 *Mass. Rep.* 342. *Stevens vs. Bell*, 1 *Burr.* 474. 2 *Johns. Ch. Rep.* 306. In the first of these three cases, Parsons, Ch. Justice, declared that it was the duty of the principal to indemnify his security against an engagement entered into for his use ; that the existing debt or the engagement by

the surety, constituted a meritorious consideration for a conveyance, and that the same, if done honestly and fairly, was repugnant to no principle of public policy.

In *Buffum vs. Green & Snow, 5 N. Hamp. Rep.* 71, one of the points raised and decided, was as to the validity of a deed to land, made by the principal to his sureties, to save them harmless *pro tanto*, against liability. It was objected by Parker, as counsel for the creditor of the grantor, that nothing was paid by the sureties—that no debt was discharged—in fact, *no notes were given up.* Mr. Woodbury, now associate Justice of the Supreme Court, on the same side, conceded in argument, that had the grantees, before the deed was delivered, *voluntarily paid the debts, "or agreea to pay them at all events, and discharge the grantor, either of these might have furnished a good consideration."* He insisted, however, and such was the fact, that there was no agreement on the subject. Mr. Woodbury further urged, as it has been contended at bar, that the claims of the creditors, notwithstanding the transaction, might still be enforced, in whole or in part, against the vendor, as their caprice or pleasure might prescribe.

The opinion of the Court was delivered by Richardson, C. J. "But it is said, that although the debts due to the grantees might be a good consideration, their liabilities as sureties could not be so. *The law is, however, otherwise,* and the grantees are as well entitled to hold the land conveyed to them, to enable them to pay the debts of the grantor for which they were liable, as they would have been to hold money, had it been paid to them for that purpose. We have no doubt there was a good consideration for the conveyance."

Thus, it will be seen, that the doctrine is well sustained—that the mere liability of the grantee, as surety for the grantor, is a sufficient consideration to maintain a sale against a creditor of the grantor, independent of the express stipulation between Hungerford and McWhorter, as to the payment of the grantor's debts. And we believe this principle to be founded in reason. Whenever the surety accepts such conveyance as indemnity from his principal, his original character and relation to the contract, is changed. Instead of surety he becomes principal. Having received property for that purpose, it is a fund in his hands for the payment of the debts designated; and apart from the express agreement to that effect in the present instance, the surety, by ac-

cepting the fund, assumes the payment of the debts, and if the principal should be compelled thereafter to pay them, he would have his remedy over against the surety.

But how much stronger is this case, where, by written agreement between the parties, the property conveyed is received in discharge of the principal, and he is indemnified against loss or liability on his outstanding debts. The sufficiency of such a contract was not doubted, but on the contrary, expressly recognised by the opposing counsel, in the case cited.

It is not questioned but that the creditors specified in McWhorter's bond, might have bought this property of Hungerford in extinguishment of their debts; why is not the undertaking of McWhorter, the indorser, to pay them, and to save Hungerford from loss, equally valid? To hold otherwise would be to deprive indorsers and sureties, classes highly favored by the law, of the privilege of doing that for their protection allowed to all other creditors. For often it would happen, as with a portion of the outstanding debts here, that not being due, the indorser, or surety, could not control them. Many of our Statutes treat sureties as creditors. They are authorised to attach the property of their principals. *Prince's Dig.* 35. Why may they not buy it in satisfaction of their existing liability?

It is argued that this transaction amounts to a trust for the benefit of Hungerford or his creditors. We do not so understand it. McWhorter does not take the property to pay the demands with its proceeds, but he covenants to discharge them at all events, in consideration of the sale. Suppose the property should perish or be rendered wholly unavailable, would McWhorter be released from his liability? We think not. The loss would fall on him, personally, and failing to comply with his engagement, his obligation could most assuredly be enforced.

It is apprehended that mischief may result from this construction of the Act. Our reply is, that against possible abuse and disaster, no human wisdom can provide. Suppose Hungerford had sold the same estate to McWhorter, or any one else on credit, and taken his notes instead of cash in payment, as he had a clear right to do. The interest of his creditors might have been jeoparded by such transfer, still we imagine the conveyance, if *bona fide*, would be legal. Whether Chancery could or would interfere and grant relief in such case, or in the event of the fail-

ure of the purchaser, under the facts and circumstances of the case before us, is not for this Court to determine.   Here, at any rate, the conveyance of the property from the maker to the indorser, does not and cannot weaken the safety and security of the debt.

We are reluctant to open any door to fraud, by extending the interpretation heretofore put upon the Act of 1818.   But we cannot close our eyes to the fact, that it fully and distinctly reserves to the insolvent debtor, the Common Law right, which he before enjoyed, of making absolute and *bona fide* sale of his property, either to a stranger, or to a creditor, in satisfaction of his claim.

[2.] And thus every man may, in this, as in divers other modes, under our law, prefer any one or more of his creditors.   In favor of such, he may divest himself of every article that he owns, leaving himself utterly destitute, and no other creditor has any *legal* cause of complaint, if the transaction was honest and for a valuable consideration.   Believing that the covenant of McWhorter, to say nothing of his liability as indorser, constitutes such consideration, we are constrained to reverse this judgment.   With the *bona fides* of the transaction, as to the matters of fact which may be involved in it, we have nothing to do.