IN THE

# SUPREME COURT OF GEORGIA,

## AT ATLANTA.

### OCTOBER TERM, 1888.

PRESENT—L. E. BLECKLEY, . . . . . . . . . Chief Justice.
M. H. BLANDFORD, . . . . . . . . Associate "
T. J. SIMMONS, . . . . . . . . . Associate "

POWELL, BROTHER & COMPANY *et al. vs.* KELLY BROTHERS & PORTER *et al.*

| 82 | 1 |
| 8 | 141 |
| 82 | 1 |
| 92 | 552 |
| 82 | 1 |
| 94 | 762 |
| 82 | 1 |
| 98 | 232 |

1. An instrument in writing by which Kelly Bros. & Porter sold and transferred to one Whitney their whole stock of goods, mortgages, notes, etc., in payment of a pre-existing debt which they owed to Whitney, and by which Whitney agreed that the indebtedness which he held against the firm should be settled in consideration of the sale, and that he would pay certain other preferred creditors of the firm mentioned in the instrument, his obligation being not to pay these other preferred creditors out of the proceeds of the goods, but to pay them whether such proceeds were sufficient or not, and no trust being reserved by the instrument so far as disclosed by the record, either expressly, impliedly or secretly, for the firm or any of its members, was an absolute bill of sale and not an assignment. *Coggins vs. Stephens,* 73 *Ga.* 414, distinguished.
(*a*) While the form and words of an assignment and bill of sale are generally the same, the element of trust, either express, implied or secret, distinguishes an assignment from a sale.
2. That portion of section 1953 of the code containing the words, "or that of any other favored creditor, to the exclusion of other cred-
v 82-1

itors." was repealed by implication by the act of February 23, 1866.

(*a*) The acts of the legislature requiring an assignor to attach to the assignment a list of creditors and schedule of indebtedness, etc., apply only to assignments, and do not apply to sales, especially sales like the one under consideration; the facts in the record showing that Kelly Bros. & Porter did not sell to Whitney the whole of their property but only a part, and sold the other portion to some other creditors.

3. Questions as to actual concealed fraud, or of the sale being made to hinder or delay creditors, were matters of fact to be passed on first by the court below and then by a jury; and as the court did not see proper to grant an injunction upon these grounds, this court cannot say that he erred.

March 1, 1889.

Debtor and creditor. Sales. Assignments. Preferences. Statutory law. Code. Fraud. Before Judge HUTCHINS. Walton county. At chambers, January 4, 1889.

Powell, Brother & Co., by their petition, alleged as follows: They were creditors of Kelly Brothers & Porter, a mercantile firm possessed of assets of the value of about $100,000. About December 14th, 1888, being insolvent, Kelly Brothers & Porter made a pretended sale of all their assets to one S. M. Whitney, and this sale was made to defraud their creditors. No inventory of assets or list of creditors was attached to the conveyance, but it was claimed that the consideration of the conveyance was an indebtedness by them to Whitney, and an assumption by Whitney of debts due by Kelly Brothers & Porter to certain other creditors, many creditors being excluded by this conveyance. It was understood between the parties that if there should be an excess after the debts thereby intended to be secured were paid, Kelly Brothers & Porter should have the benefit of it. Whitney knew or had reasonable grounds to suspect a fraudulent design of Kelly Brothers & Porter. Whit-

ney has taken charge of the stock and other assets and is proceeding to dispose of them. The so-called bill of sale was really an assignment, its nominal consideration being much less than the amount of the assets covered by it. The indebtedness to Whitney, and the indebtedness assumed by Whitney, were not incurred for any of the stock of goods conveyed, or for any goods of which the notes and accounts conveyed were the proceeds. Great secrecy in the execution of the pretended bill of sale was charged. It was further charged that complainants were induced to extend credit to Kelly Brothers & Porter by representations made by the latter that they were perfectly solvent, etc. Discovery was waived. A large number of other creditors of Kelly Brothers & Porter were made parties complainant to the bill.

The defendant demurred on the following grounds: (1) No equity in the bill; (2) complainants have no lien; (3) complainants have a remedy at common law.

Kelly Brothers & Porter answered the bill, and so far as material, their answer was, in substance, as follows: Their stock of goods, notes, accounts, etc., while nominally of large value, were not really worth more than $40,000. They could not carry on their business, and on December 15th, 1888, sold said stock, notes, etc. to Whitney for $55,151.92, "the three Kellys" conveying, in addition to the goods, notes, etc., certain lands and mules worth $7,000 to $8,000. The consideration of the conveyance was a certain debt due to Whitney amounting to $28,000 or $30,000, and the assumption by Whitney of other debts, making up the $55,000 mentioned. The sale was fair, absolute, without reservation of any kind, and with no intention to defraud. It was not an assignment nor intended as such, but was a sale of part of the assets of the firm. Other assets were sold and conveyed the same day to other parties to

whom the firm was indebted. There was no under-standing that the defendants were to have the benefit of any excess, or that Whitney should take the assets and pay the surplus to certain favored creditors.

Attached as an exhibit to the answer is a copy of the conveyance in question, which is of all the stock of goods, notes, mortgages, etc. of Kelly Brothers & Por-ter. The consideration named is $55,151.92, paid by Whitney as follows : "$34,198 is due to him for money advanced to us and which is hereby settled, and the said Whitney has agreed, and hereby obligates himself, to pay and now assumes the payment of the following open cotton bills due by us to the parties named there-in and in the amounts opposite their names which ap-pear in the list marked exhibit A," etc., " and also the following amounts due to the parties named, to wit "; and then follows a list of names of certain parties with amounts due them. Included in this list is a debt to Mrs. W. A. Kelly for $22.20, and a debt to John T. Glenn, " his fees of $2,000, which is due by us to him." The instrument proceeds : " In the amount of $34,198 due to said Whitney by us is included the following debts :" then naming indebtedness to four different firms, amounting to $2,300, " which the said Whitney agrees to pay and has assumed the payment of, and the said Whitney also assumes and obligates himself to pay to the employés in our service the amounts which may be due to them, not exceeding $2,701.58," also a certain other debt of $2,000. " The intention of the contract is, that the said W. A. Kelly, Brothers & Porter sell and transfer to the said S. M. Whitney the property above described, in consideration that the debt due by them to said Whitney is settled, and that said Whitney pays the debts due by them as described in the contract. The property hereby transferred and conveyed not being

sufficient in amount, W. A. Kelly & Brothers and the partners composing that firm," mentioning them, " have conveyed to said S. M. Whitney certain lands in other counties to make a sufficient consideration." The instrument bears date of December 15th, 1888, and is signed by Kelly Bros. & Porter and by the members of that firm individually, by the members of the firm of W. A. Kelly & Brothers individually, and by S. M. Whitney. Attached to it is an exhibit of the cotton bills, and in the list appears the name of Josiah Blassingame, for $86.58, and " Blank, $42.50."

Whitney answered the bill as follows: The indebtedness of Kelly Brothers & Porter to him was for advances made by him as cotton factor. They were unable to pay him the money, and proposed to sell him their stock of goods, notes, accounts, etc. in payment, if he would furnish them money to pay certain others of their creditors. He agreed to take the property in payment and to assume payment of debts specified in the written contract, if they would sell him said stock, notes, etc., and in addition certain lands and mules in Jasper county. The sale was absolute, unconditional and in good faith, and he fears that he will lose $5,000 thereby. He has already paid about $4,000 on the debts he assumed. He cannot realize over $38,000 from the stocks, notes, etc., and not over $8,000 or $9,000 from the lands and personalty in Jasper county, while he has assumed the payment of over $25,000 besides his own debt. The sale was not an assignment nor intended as such; was not made to defraud; there was no understanding that any excess should be for the benefit of Kelly Brothers & Porter or either of them, or that any surplus should be reserved for certain favored creditors as charged. The sale was absolute, and no surplus was mentioned or thought of. Kelly Brothers & Porter did not convey all

their assets to respondent; they paid on that day and since other creditors with assets with which respondent had no connection, etc.

On the hearing for preliminary injunction, the testimony, so far as material, was as follows: The complainants put in evidence an affidavit to the effect that, since the conveyance, Josiah Blassingame had stated that, before Kelly Brothers & Porter made their sale to Whitney, they paid him, Blassingame, all they owed him. Also that the Mrs. W. A. Kelly named in the conveyance was the wife of W. A. Kelly, one of the firm of Kelly Brothers & Porter; and that she is dead, leaving her husband as sole heir. Also that, since the sale to Whitney, W. A. Kelly had stated that the stock of goods transferred was worth over $30,000 to $35,000, and the notes and accounts from $55,000 to $60,000, and in addition he and his brothers had conveyed to Whitney some of their real estate; that they owed Whitney about $30,000, and he had assumed the payment of about as much more; that the sale was absolute, but that all Whitney wanted was his money; and that Whitney had gotten all of the assets of Kelly Brothers & Porter as a firm and as individuals. The complainants also introduced a letter received by H. C. Leonard, the manager of the Bradstreet agency in Atlanta, between 21st and 25th of November, 1888, from Kelly Brothers & Porter, per W. A. Kelly. This, so far as material, was a general statement that said firm was worth $85,000 above all liabilities.

The defendants read in evidence their answers with the exhibits attached, together with various affidavits, which may be generally stated as tending to show the following: That the sale in question was not a secret one; that the entire contract was put in writing; that it was not made for delaying, hindering or defrauding creditors; that there was no reservation as to excess or

surplus; and that the value of the property conveyed is less than amount of indebtedness to Whitney and the indebtedness assumed by him.    The defendants also introduced a list of the realty and personalty in Jasper county conveyed by W. A. Kelly & Brothers to Whitney, and affidavits showing that this property was worth but little over $9,000.    The defendants also introduced the affidavit of W. A. Kelly to the effect that his wife had deposited about $32 with Kelly Brothers & Porter about November 15th, 1888, and died November 28th, 1888, and when she died she was indebted in an amount largely more than the property she left; that her name had been left by oversight on the list, as it was not the intention to make her estate one of the creditors whose debts were assumed by Whitney.

The judge rendered the following decision :

"Being of the opinion that the transaction between defendants, W. A. Kelly Brothers & Porter and S. M. Whitney, was an absolute sale, and not an assignment in the sense claimed by the petitioners, and there being no sufficient cause shown why the extraordinary remedies prayed for should be granted, the injunction and appointment of a receiver are refused," etc.

The plaintiffs excepted and assigned error as follows:

(1) In ruling that the transaction was an absolute sale and not an assignment.

(2)-(3) In holding that there was no sufficient cause shown for injunction and receiver.

(4) Petitioners say that the court should have held that the transaction was an assignment and was void for lack of inventories and schedules; that it was fraudulent and void because the names of Blassingame and Mrs. Kelly were included in the instrument of conveyance ; that it was void because made to delay creditors ; that it was void because made by debtors insolvent at the time, and reserved a benefit to one (W. A. Kelly) of the firm;

and that it was void because it reserved a benefit for favored creditors to the exclusion of other creditors.

CANDLER, THOMSON & CANDLER, JOHN L. HOPKINS and B. S. WALKER, for plaintiffs.

JOHN T. GLENN and HENRY D. McDANIEL, for defendants.

SIMMONS, Justice.

1. We have carefully read the pleadings and affidavits in this case, and in our opinion there was no error in the court below in refusing the injunction and the appointment of a receiver as prayed for; nor was there any error, under the facts as disclosed by this record, in holding that the transaction between these parties was a sale and not an assignment. The paper, on its face, is an absolute bill of sale. It sells and transfers to Whitney the whole stock of goods, mortgages, notes, accounts, etc., in payment of a pre-existing debt which Kelly Brothers & Porter owed to Whitney; and Whitney agrees therein that the indebtedness which he holds against said firm shall be settled in consideration of said sale to him of said goods. He also obligates himself to pay certain other preferred creditors mentioned in said bill of sale. The obligation assumed by Whitney is not to pay these other preferred creditors out of the proceeds of the goods, but he assumes the debts and obligates himself absolutely to pay them, whether the proceeds of the sale of the goods are sufficient or not. Under this obligation, if the goods were destroyed, Whitney would still be bound to pay these debts. So far as we can discover from the bill of sale and the facts disclosed by this record, this seems to have been a *bona fide* transaction between these parties—a transaction

which does not violate any law in this State, but which the law expressly sanctions,—that is, that a debtor may prefer certain creditors to others. So far as we can discover from the facts in the record, there is no trust reserved in this bill of sale, either expressly, impliedly or secretly, to Kelly Brothers & Porter, or to any one of them. While the form and words of an assignment and bill of sale are generally the same, the element of trust, either express, implied or secret, distinguishes an assignment from a sale. Burrill, in his work on Assignments, page 9, says: "An important distinction between the two modes of transfer arises out of the character of a *trust*, which belongs to an assignment. A sale (in cases free from fraud) is, on delivery of the thing sold and receipt of the consideration, a complete transaction, passing absolutely and irrevocably all the seller's interest in the subject of it, without reversion or return under any circumstances. An assignment is likewise an absolute conveyance by which both the legal and equitable estate is divested out of the grantor, but the title vested in the assignee is subject to the uses and trusts in favor of the creditors, and upon their satisfaction a trust results in favor of the assignor in the residue of the unappropriated property or its proceeds. A transfer of specific property to a creditor in discharge of a pre-exisiting debt is in effect a sale. An assignment of itself does not satisfy the claims of the creditors to any extent, but provides a method for raising the means with which to pay them. Sales are often subject to covenants on the part of the buyer and seller, from which assignments are free. An assignee is not liable to the payment of encumbrances to the same extent as a purchaser."

This being the law, and the facts in the record showing that this was a *bona fide* sale between the parties,

and that there was no trust, either open or secret, reserved to the grantors or to any one for them, the court did not err in holding that it was a sale and not an assignment. *Watkins vs. Pope,* 38 *Ga.* 514; Johnson *vs.* McGrew, 11 Withrow (Iowa), 151; Anderson *vs.* Smith, 5 Blackf. (Ind.) 395. The case of *Coggins vs. Stephens,* 73 *Ga.* 414, relied upon by counsel for the plaintiffs in error, was a case in which the facts were very different from the facts in this case. The entire stock of goods and other property in that case greatly exceeded in value the consideration named in the deed, and there was evidence enough in that case to authorize a jury to find that there was a secret trust. In this case the trust element is lacking, and the evidence shows that the property sold is of much less value than the debt of Whitney and those which he has assumed.

2. But it was argued by counsel for the plaintiffs in error that whether this was a sale or an assignment, it is still void, under the last clause of section 1953 of the code. That section is as follows: "A debtor may prefer one creditor to another, and to that end he may *bona fide* give a lien by mortgage or other legal means, or he may sell in payment of the debt, or he may transfer negotiable papers as collateral security, the surplus in such cases not being reserved for his own benefit *or that of any other favored creditor, to the exclusion of other creditors.*"

It is argued that the facts of this case show that there will be a surplus left after the payment of Whitney's debt, and that this bill of sale reserves that surplus for other favored creditors than Whitney, and to the exclusion of these complainants, and that therefore, under the latter part of this section, said sale to Whitney is void. If these words, "or that of any other favored creditor, to the exclusion of other cred-

itors," are still of force as the law of this State, it
would seem that this point is well-taken. This part
of the section at first gave us some trouble, but after
a careful examination thereof, and an investigation as
to how these words originated or became incorporated
in the code, we have come to the conclusion that they
were repealed by the act of 23d February, 1866. (Acts
1866, p. 20.) Prior to the act of 1866, the policy of
this State, as shown by the act of 1818, was that a
debtor should not prefer one creditor to another, but
there was a proviso to that act that a debtor might ex-
tinguish his debt to a creditor by a *bona fide* sale of
property for that purpose, not reserving any part
thereof in trust for himself or any one else. Under
this proviso, this court made several decisions, notably
in the case of *Eastman vs. McAlpin,* 1 *Kelly,* 157, and
some others on the same line, where a debtor was
allowed to sell his property to a creditor and prefer
other creditors as to the surplus. Other decisions were
made somewhat in conflict with these. To the codi-
fiers the former of these decisions doubtless seemed to
be inconsistent with the act of 1818, because they
allowed a preference of creditors in the disposal of the
surplus. In order to harmonize these decisions and
make the policy of the law consistent with the plain
provisions of the act of 1818, we think the codifiers
added the words above quoted, which made the whole
scheme and policy of the act of 1818 consistent; so
that while a debtor could still make a *bona fide* sale of
his property to pay a debt, he could not, under these
words, prefer one creditor to another by directing a
surplus to be paid to the preferred creditor. The law
thus stood from the time of the adoption of the code
to 1866, when the legislature thought proper to change
the policy of the State in regard to the preference of

creditors by a debtor, and they passed the act of that year, in which they allowed a debtor to prefer one creditor to another. That act, in our opinion, repealed by implication the latter part of section 1953, and those words should have been stricken from the section when the code was subsequently revised. See Endlich on Interpretation of Statutes, §195 *et seq.* These words are in direct conflict with the policy of the act of 1866. That act, as said before, allows a debtor to prefer one creditor to another, and we do not see any reason now why a debtor may not sell his property *bona fide* to pay a debt, and devote the surplus, if there is any, to a particular creditor or creditors, in preference to other creditors. The act does not prescribe any particular manner or form in which a debtor may prefer one creditor to another. In our opinion, he may do it by an assignment of all his property to one creditor, or a class of creditors, or he may do it by selling his property *bona fide* to one creditor in payment of his debt, and devoting the surplus to the payment of preferred creditors.

It is argued, however, that to allow sales of the kind now under consideration to stand, would be a virtual repeal of the policy of the legislature in regard to assignments; that that policy requires the assignor to attach to the assignment a list of creditors and the amount of indebtedness, and declares that unless this is done, the assignment shall be void. This court has been very strict in the enforcement of these statutes in regard to assignments proper; because it seemed to be the policy of the legislature to require of the assignor a clean showing as to all of his property, his debts and his creditors. This was required, as we have decided, for the benefit and protection of the creditors. These acts, as will be seen by reference thereto, apply only to assign-

ments, and do not apply to sales, especially sales like the one under consideration; the facts in this record showing that Kelly Brothers & Porter did not sell to Whitney the whole of their property, but only a part thereof, and sold the other portion to some other creditors.

3. It will be observed that we have not discussed the question of actual concealed fraud, or of this sale being made to hinder or delay creditors. These were matters of fact to be passed on first by the court below, and then by a jury; and as he did not see proper to grant an injunction upon these grounds, we cannot say that he erred therein.

This case we presume will (if the parties desire) be submitted to a jury upon all these questions, and if they should find from the evidence that this was a fraudulent sale, or that it was made to hinder, delay or defraud creditors, doubtless the learned judge below will sanction their finding should the evidence authorize it.

Judgment affirmed.