## SILVER & GOLDSTEIN *et al. v.* CHAPMAN *et al.*

1. When this case was formerly before this court it was held that "The question as to whether or not the sale and assignment of the exemptions claimed was bona fide or fraudulent was for the jury under the facts of the case;" and the jury on the second trial, under substantially the same evidence, having found the sale valid, we can not say that their verdict is contrary either to the law or the evidence.

2. The assignments of error contained in the first, second, and third grounds of the amendment to the motion for new trial are without merit.

3. An insolvent debtor may prefer one creditor to another, and to this end he may transfer choses in action as collateral security for a pre-existing debt, the surplus in such case not being reserved for his own benefit. A voluntary bankrupt has an assignable interest in the property claimed by him in his petition as exempt under the constitution and homestead laws of this State; and he can transfer this interest in good faith to his creditor either in extinguishment of, or to secure, a pre-existing debt, before the property is set aside by the trustee in bankruptcy, and before the same is confirmed by the bankrupt court.

4. Insolvent debtors can transfer choses in action to one or more creditors to secure pre-existing debts, to the exclusion of other creditors. Where a bankrupt transfers and assigns in good faith to a creditor his homestead exemption, for which he has applied to be set aside in money, to secure a debt to such creditor, with the understanding that the creditor,

---

Appeal and Error, 4 C. J. p. 852, n. 56; p. 1093, n. 77; p. 1095, n. 78.

Assignments for Benefit of Creditors, 5 C. J. p. 1036, n. 10; p. 1044, n. 87; p. 1045, n. 95, 96; p. 1046, n. 98, 99.

Fraudulent Conveyances, 27 C. J. p. 441, n. 56; p. 444, n. 70; p. 499, n, 26; p. 534, n. 44.

for the bankrupt, is to turn over to another creditor whom the bankrupt wishes to prefer, the surplus of such funds left after paying the debt of the transferee, such transaction does not amount to an assignment, and is not void because it fails to comply with the requirements of the law touching the execution of assignments for the benefit of creditors.

No. 5444. JANUARY 14, 1927. ADHERED TO ON REHEARING, MARCH 3, 1927.

Equitable petition. Before Judge Stark. Jackson superior court. April 29, 1926.

Chapman Brothers, a firm composed of W. H. and Oscar Chapman, were adjudicated bankrupts. Each of them applied to have set aside a cash exemption of sixteen hundred dollars out of their stock of merchandise and other property. Silver & Goldstein held the notes of the bankrupts, containing waivers of homestead and exemption. These creditors filed their petition against the bankrupts, alleging the above facts, and praying for an injunction restraining the bankrupts from transferring or attempting to transfer the property claimed by each of them as a homestead or exemption, and for the appointment of a receiver to take charge of said exemptions when set aside, for the purpose of applying the proceeds to the claims of petitioners and other creditors similarly situated. Ridley-Yates Company intervened, alleging that on May 18, 1922, and prior to the filing of the petition in this case, each of the bankrupts, in consideration of the sum of five dollars cash in hand paid, and other valuable considerations, transferred, sold, and assigned to intervenor all right, title, and interest which he might have to any property or funds claimed by him as a homestead exemption in the bankruptcy proceeding. Each assignment was in writing and made directly to the intervenor. It prayed that the title to the funds set apart as homestead exemptions to the bankrupts be decreed to be in it; that, if the homestead exemptions set apart to the bankrupts had been paid over to the receiver, he be ordered to pay the same to intervenor; and that if the homestead exemptions had not been turned over to the receiver, he be directed to dismiss his intervention in the bankrupt court in which he claimed the same. By amendment Silver & Goldstein alleged that said assignments were fraudulent and void, because made to hinder, delay, and defraud creditors of the bankrupts. The plaintiffs by another amendment alleged that said assignments were not made in good faith, but that the debtors made them

with the reservation of an interest in said property. By another amendment plaintiffs allege that said assignments were for the benefit of the creditors of said assignors, made when they were insolvent, and were invalid because the assignors did not comply with the laws of Georgia relating to assignments for the benefit of creditors, in that each of said assignments was not executed, filed, and recorded as a deed, and contained no inventory of property or list of creditors and no affidavit that said assignment was of all property, and that the same was not made to hinder, delay, or defraud creditors. They further alleged that while each of said assignments on its face purported to sell said property only to Ridley-Yates Company, the two assignments transferred property of the value of $3,200, with the secret agreement between the assignors and assignee that the surplus should be paid by the assignee to Dougherty-Little-Redwine Company, another creditor of assignors, holding a note against the bankrupts for about $910.

On the trial P. D. Yates, the president of Ridley-Yates Company, testified as follows: The bankrupts came to his office and disclosed to him the purpose of their visit. W. H. Chapman told him they were in financial trouble, and were looking for advice. They had a list of liabilities amounting to $74,428, and assets amounting to $27,235.00. After looking into their affairs he told them that they were hopelessly insolvent, but that he was not experienced in giving advice, that the Retail Merchants Credit Association would give advice as to what to do. They went over there. Chapman Brothers had been a good customer of theirs for a number of years, and they were friends. His company had sold them goods since they had been in business, and had confidence in them, and they had confidence in his company. Chapman said they would like to protect Ridley-Yates Company if he could, and witness said that if Chapman would do anything for his company he would appreciate it. Chapman then said he would like to make the homestead exemptions to Ridley-Yates Company and Dougherty-Little-Redwine Company. Each of the bankrupts made a transfer of the same kind. Each transfer is to Ridley-Yates Company. The two exemptions were for $3,200, and the claim of Ridley-Yates Company was for $2,400. Its claim and that of Dougherty-Little-Redwine Company were more than the exemptions. The party who wrote the assignments left out Dougherty-

Little-Redwine Company. He told Chapman, if his stock was sold in the bankrupt court at a reasonable price, he would buy it in, take their notes and chattel mortgages on the stock of goods and sell it back to them. If it sold for more than it was worth, he would sell him new stock and take his note for it. The stock of merchandise was sold by the bankrupt court and bought by Ridley-Yates Company and Dougherty-Little-Redwine Company for $7,550, and the purchasers sold it to Chapman Brothers at the price they paid for it. Ridley-Yates Company paid 77 per cent. of the purchase price, and Dougherty-Little-Redwine Company paid 23 per cent., these payments being proportionate to their claims. The exemption fund, after the notes of Ridley-Yates Company were paid, was to be applied on Dougherty-Little-Redwine Company's notes. The Chapmans were not to get any of the fund. Ridley-Yates Company and Dougherty-Little-Redwine Company performed their duty in buying the stock of goods. The Chapmans had no interest in the exemption funds after the assignments. They had no agreement to give them anything out of it. "The only thing we were to do was to put them back in business by getting them these goods or purchasing new goods for them." Ridley-Yates Company proved its claim in bankruptcy, and got a 5 per cent. dividend amounting to $126.

Oscar Chapman testified: I am a member of the firm of Chapman Brothers that failed about 1922. We went into bankruptcy. Just before going into bankruptcy we went to Atlanta and saw Mr. Yates. We went to find out what we ought to do and could do. We had a list of liabilities and assets. We concluded we were broke. Mr. Yates said he was not capable of advising us, and directed us to the Retail Credit Association so they could advise us. My brother and I executed the assignments to Ridley-Yates Company. My understanding is that Ridley-Yates Company, out of the $3,200 exemption funds, was to take up our notes to it and Dougherty-Little-Redwine Company, so far as it would go, and pay for the expense of fixing up the papers. We were put back in business by Ridley-Yates Company and Dougherty-Little-Redwine Company. We did not get anything out of the $3,200 we assigned to them, only the credit on what we owed. The reason we went to see them was because we thought they were our best friends, and we began business with them. We then decided to

go into bankruptcy, and made these assignments . to cover the notes we owed at the time. We never got any of the assignment funds. The stock of goods was sold for $7,550. It was bought in by Ridley-Yates Company, and we bought it back. We went into bankruptcy because it looked like it was the only chance to make a living. Our purpose in making these assignments was because they had treated us so nice, and we were told by the Chamber of Commerce that we could prefer one creditor over another, and we wanted to protect them if we could. Our object was to prefer Ridley-Yates Company, and we transferred our homesteads to it, and we wanted Dougherty-Little-Redwine Company to have some too, and, after they paid the lawyer, to pay over the balance to Dougherty-Little-Redwine Company. I told Yates to pay the balance out, after his notes were paid, to the lawyer and to Dougherty-Little-Redwine Company. We owed the latter company about $900. We owed Ridley-Yates Company about $2,400. We made the assignments for that purpose.

The writing by which Oscar Chapman transferred to Ridley-Yates Company his homestead exemption is as follows:

"Georgia, Jackson County. For and in consideration of the sum of $5.00 cash in hand paid, receipt of which is hereby acknowledged, and for other valuable considerations, I hereby transfer, sell, and assign to Ridley-Yates Co. all right, title, and interest which I may have to any property or funds claimed by me as a homestead exemption in the case of Chapman Brothers, bankrupt, or set aside to me as a homestead exemption by the trustee in bankruptcy in the case of Chapman Bros., bankrupt. This 18th day of May, 1922.                    Oscar Chapman."

The writing by which W. H. Chapman transferred his homestead exemption to this company, is in the same form, and was signed by him. These exemptions were set aside in money. It was admitted by the attorney for the defendants and Ridley-Yates Company, that there had been no compliance with the code sections relating to assignments for the benefit of creditors, because not necessary, as the instruments were not assignments for the benefit of creditors under the fraudulent trader's act. Plaintiffs introduced notes of the bankrupts to Silver & Goldstein, Bowman-Moore Hat Company, Citizens Bank & Trust Company, and Brinkley Clothing Company, all containing homestead and exemption waivers.

The jury returned a verdict finding that the assignments were valid. Plaintiffs moved for a new trial upon the general grounds, and by amendment added the following special grounds: (1) The court erred in not charging one of the issues to the jury, as the amendments filed and allowed made an issue for the jury to pass upon, whether or not such assignments to Ridley-Yates Company were made by W. H. Chapman and Oscar Chapman because of a contemporaneous agreement entered into between the assignors and the assignee that Ridley-Yates Company would buy up the old stock of goods and turn the same over to Chapmans, and that their intent and purpose in making the assignments was not to prefer Ridley-Yates Company solely on their debt, but to obtain such contemporaneous agreement for themselves. (2) The court refused a request to charge the jury as follows: "I charge you that if you should find that the Chapmans made the transfer to Ridley-Yates Co., with the purpose and intent of obtaining from them, and Dougherty-Little-Redwine Co., financial aid to rebuy their old stock of goods or be furnished with a new stock, and if such was their intent in making such transfer of exemption property, that said intent and purpose would not be a transfer in good faith but a fraudulent one." (3) The court erred in refusing a request to charge the jury as follows: "I charge you that if the transfer was to Ridley-Yates Co. only in part, and surplus to be used for benefit of obtaining from Dougherty-Little-Redwine Co. aid in buying back for Chapmans the old stock of goods, that such reservation of interest would make it a fraudulent one, and you should so find by your verdict." (4) The court erred in refusing a request to charge the jury as follows: "I charge you that if the transfer was made partly to Ridley-Yates Co., and the balance to be paid over by Ridley-Yates Co. to Dougherty-Little-Redwine Co., on their claim, then such a transfer would be a voluntary assignment for the benefit of creditors, and void, unless the law requiring the filing of inventory or schedule, making of an affidavit, recording the same, were complied with and it is admitted that same were not done. So if you find, as stated, that such surplus was to be paid over by Ridley-Yates Co. to Dougherty-Little-Redwine Co., you should find the instrument void as such a general assignment for benefit of creditors." (5) The plaintiff's amendment having been allowed and filed, making the

issue that the instrument was a voluntary assignment for the benefit of creditors, it having been admitted in evidence that Ridley-Yates Company were to act as trustees as to the balance of the fund, in disbursing the same, and no compliance with law as to such assignment for the benefit of creditors, as was admitted in open court, it was error not to submit the issue to the jury, because the plaintiff had the right to have such issue submitted. (6) The court erred in refusing to allow counsel for the plaintiff to open and conclude the argument, which they insisted they had the right to do, but over their objections the court allowed counsel for Ridley-Yates Company to open and conclude the argument, which was error, as plaintiffs had attacked the assignment to Ridley-Yates Company; and as the burden of proof was on plaintiffs, their counsel were entitled to open and conclude the argument.

*J. O. Adams* and *Wolver M. Smith,* for plaintiffs.

*Pemberton Cooley,* for defendants.

HINES, J. (After stating the foregoing facts.)

1. When this case was here before, this court held that it could not be held as a matter of law that the assignments by the bankrupts to Ridley-Yates Company, under the facts appearing in the record then before the court, were fraudulent per se, but that "The question as to whether or not the sale and assignment of the exemptions claimed was bona fide, or fraudulent was for the jury under the facts of the case." *Silver & Goldstein* v. *Chapman,* 161 *Ga.* 203 (129 S. E. 842). Upon the trial of the case now under consideration the jury found the sale and assignment to be valid. The facts relied upon to show that they were fraudulent were substantially the same on both trials. These facts, as this court held when the case was here before, made a question for the jury, and we can not say that their finding is contrary either to the evidence or the law.

2. We do not think that the assignments of error set out in the first, second, and third grounds of the amendment to the motion for new trial are meritorious. They are based upon the theory that these transfers would be void if made in pursuance of a contemporaneous agreement by which the transferee and another company were to buy in the stock of goods of the transferors, and resell the same to them, and not solely for the purpose of pre-

ferring the transferee. When this case was here before, this court held that these facts would not render these assignments fraudulent and void, but that the transaction was valid, if there was no intention to defraud, delay, or hinder other creditors of the assignors. This is now certainly the law of the case. Nor would the situation in this respect be changed if such contemporaneous agreement was entered into by the assignee and another creditor of the assignors. There is evidence to support the finding of the jury, and we can not say that the verdict is contrary either to the evidence or to the law.

3. By the act of December 19, 1818, assignments or transfers of property by an insolvent debtor, to one or more of his creditors, to the exclusion of other creditors, were declared to be null and void; but this act contained a proviso that nothing therein contained should prevent any person or persons in debt from bona fide and absolutely selling and disposing of any part or the whole of his property, if the same was free from any trust for the benefit of the seller, or any person or persons appointed by him. Cobb's Digest, 168. This act came before this court, soon after its organization, for construction, in *Eastman* v. *McAlpin,* 1 *Ga.* 157, and this court held that "a debtor in insolvent circumstances may make an absolute and *bona fide* sale of his property to a creditor in payment of a *bona fide* pre-existing debt, or to any other person, without such sale being obnoxious to the provisions of the act of 1818, so there is no *trust* reserved for the benefit of the seller," or any other person appointed by him, and that a stipulation between the buyer and seller that certain debts of the seller to other creditors should be paid out of the purchase-money by the buyer was not such a trust as rendered the transaction obnoxious to the act of 1818. This court, speaking through Judge Warner, said: "We see nothing in this arrangement affording the least evidence of a trust, or calculated to impeach the fairness of the transaction." In *Davis* v. *Anderson,* 1 *Ga.* 176, this court said, speaking of the decision in the case cited above, "We have already decided that the debtor can make an *absolute* sale of his property to a creditor, in payment of a *bona fide* pre-existing debt. If he can make an absolute sale, surely he can pledge it, or create a lien upon it, as a *security* for a pre-existing debt."

The provisions of the act of 1818 were carried forward in the

Code of 1861, § 1954, and in the Code of 1868, § 1942, except that for the language, "and without any trust or benefit reserved to the seller or any person appointed by him," appearing in the first Code, there was inserted in the Code of 1868 the language, "where any trust or benefit is reserved to the assignor or any person for him." This provision appears in the same language in the Codes of 1873 (§ 1952), 1882 (§ 1952), and 1895 (§ 2695). The Code of 1861, § 1955, contains this provision: "A debtor may prefer one creditor to another, and to this end he may *bona fide* give a lien by mortgage or other legal means, or he may sell in payment of the debt, or he may transfer negotiable papers as collateral security, the surplus in such case not being reserved for his own benefit or that of any other favored creditor, to the exclusion of other creditors." This provision reappeared in identical form in the Codes of 1868 (§ 1943), 1873 (§ 1953), and 1882 (§ 1953). It appeared in the Code of 1895, § 2697, with the substitution of the words "choses in action" in the place of "negotiable papers," so that since the adoption of the Code of 1895 an insolvent debtor can transfer choses in action as collateral security.

In *Powell* v. *Kelly,* 82 *Ga.* 1 (9 S. E. 278, 3 L. R. A. 139), this court held that the language, "or that of any other favored creditor, to the exclusion of other creditors," which appeared in all the Codes up to 1895, was repealed by the act of February 23, 1866 (Acts 1866, p. 20). This court, speaking through Mr. Justice Simmons, said: "Prior to the act of 1866, the policy of this State, as shown by the act of 1818, was that a debtor should not prefer one creditor to another, but there was a proviso to that act that a debtor might extinguish his debt to a creditor by a *bona fide* sale of property for that purpose, not reserving any part thereof in trust for himself or any one else. Under this proviso this court made several decisions, notably in the case of *Eastman* v. *McAlpin,* 1 *Kelly,* 157, and some others on the same line, where a debtor was allowed to sell his property to a creditor and prefer other creditors as to the surplus. Other decisions were made somewhat in conflict with these. To the codifiers the former of these decisions doubtless seemed to be inconsistent with the act of 1818, because they allowed a preference of creditors in the disposal of the surplus. In order to harmonize these decisions and make the

policy of the law consistent with the plain provisions of the act of 1818, we think the codifiers added the words above quoted, which made the whole scheme and policy of the act of 1818 consistent; so that while a debtor could still make a *bona fide* sale of his property to pay a debt, he could not, under these words, prefer one creditor to another by directing a surplus to be paid to the preferred creditor. The law thus stood from the time of the adoption of the Code to 1866, when the legislature thought proper to change the policy of the State in regard to the preference of creditors by a debtor, and they passed the act of that year, in which they allowed a debtor to prefer one creditor to another. That act, in our opinion, repealed by implication the latter part of section 1953, and those words should have been stricken from the section when the code was subsequently revised." In the next revision of the Code these words were omitted by the codifiers. Code 1895, § 2697. Now, "A debtor may prefer one creditor to another, and to that end he may bona fide give a lien by mortgage or other legal means, or he may sell in payment of the debt, or he may transfer choses in action as collateral security, the surplus in such cases not being reserved for his own benefit." Civil Code (1910), § 3230. As our law now stands, a debtor may bona fide sell his property to his creditor in payment of a pre-existing debt, not reserving the surplus, if any, to his own benefit, but can devote the same to the payment of preferred creditors. In *Powell* v. *Kelly,* supra, this court said: "The act does not prescribe any particular manner or form in which a debtor may prefer one creditor to another. In our opinion, he may do it by an assignment of all his property to one creditor, or a class of creditors, or he may do it by selling his property *bona fide* to one creditor in payment of his debt, and devoting the surplus to the payment of preferred creditors."

An insolvent debtor may, by the laws of this State, give a preference in a great variety of ways to one creditor to the exclusion of others, provided it is done in good faith. *McWhorter* v. *Wright,* 5 *Ga.* 555. The giving of a mortgage with power of sale, which provided that, if the property brought at the sale more than the debt, the surplus was to be returned to the mortgagor, was not such a reservation of a trust or benefit to the mortgagor as made the mortgage and the power of sale fraudulent, even if

the mortgagee knew that the mortgagor was of doubtful solvency. *Calloway* v. *People's Bank,* 54 *Ga.* 441. A mortgage otherwise pure is not rendered fraudulent by a provision in the same, added to a power of sale conferred upon the mortgagee, to the effect that he is to hold the residue of the property in excess of the mortgage debt subject to the order of the mortgagor. *Coulter* v. *Lumpkin,* 88 *Ga.* 277 (14 S. E. 614). A voluntary bankrupt has an assignable interest in the property claimed by him in his petition as exempt under the constitution and homestead laws of this State. He may assign this interest in good faith to an existing creditor before the property is set aside by the trustee in bankruptcy, and before the exemption is confirmed by the bankrupt court. *Strickland Hardware Co.* v. *Fletcher,* 152 *Ga.* 445 (110 S. E. 229). An insolvent debtor may transfer choses in action to some of his creditors jointly to the exclusion of other creditors. *Fulton* v. *Gibian,* 98 *Ga.* 224 (25 S. E. 431); *Atlas Tack Co.* v. *Macon Hardware Co.,* 101 *Ga.* 391 (29 S. E. 27). So it is undoubtedly true that the bankrupts in this case could assign their homestead exemptions to one or more of their creditors in extinguishment of pre-existing debts, or to secure such debts, if done in good faith, to the exclusion of other creditors.

4. In the fourth and fifth grounds of the amendment to their motion for new trial the plaintiffs complain that the court erred in not giving in charge to the jury an instruction upon the issue raised by them, that the instruments which we have been considering, when construed in the light of the evidence, were assignments for the benefit of creditors of the bankrupts, and were void because they did not comply with the requirements of Civil Code (1910) § 3232 et seq. The plaintiffs contend that under the transfers of these homestead exemptions to Ridley-Yates Company, and the parol evidence explanatory of their execution, a trust was created in favor of Dougherty-Little-Redwine Company, another creditor of the bankrupts, and that by reason of this trust the transfers of these exemptions to Ridley-Yates Company amount to assignments for the benefit of creditors, and are void by reason of the fact that they did not comply with the requirements of the law touching such assignments. The exemptions were applied for to be set aside in money, and they were so set aside. Under the parol evidence introduced, the bankrupts desired to prefer

Ridley-Yates Company and Dougherty-Little-Redwine Company. To carry out this purpose they proposed to execute these transfers jointly to these two companies, but by oversight the transfers were executed to Ridley-Yates Company alone. Clearly, if the transfers had been executed to the two companies jointly, they would not have amounted to assignments. The rights of these bankrupts to the homestead exemptions were choses in action. The right of insolvent debtors to prefer creditors with pre-existing debts, by the transfer of choses in action, is expressly given. Civil Code (1910), § 3230. Such debtors can secure some of their creditors jointly to the exclusion of others. *Fulton* v. *Gibian,* supra. But we shall treat these transfers as if they were intended to be made, and were actually made, to the Ridley-Yates Company alone. So treating them, and considering them in the light of the parol evidence, do the facts make an issue as to whether or not these writings create an absolute sale or an assignment, or do they raise an issue as to whether these transfers create a lawful preference or an assignment? The important distinction between a sale and an assignment arises out of the character of a trust which always inheres in an assignment. Another distinction between the two is this: A sale, on the delivery of the thing sold and the receipt of the price, absolutely and irrevocably passes all the seller's interest in the subject-matter of the sale, without reversion or return to the seller under any circumstances; but in the case of an assignment, the title is vested in the assignee, subject to the uses and trust in favor of the creditors, and upon their satisfaction a trust results in favor of the assignor in the residue of the unappropriated property or its proceeds. A transfer of specific property to a creditor in discharge of pre-existing debts is in effect a sale. An assignment does not of itself satisfy the claims of the creditors to any extent, but provides a method of raising the means with which to pay them. Sales are often subject to agreements on the part of the buyer and seller from which assignments are free. *Powell* v. *Kelly,* supra. Under the instruments involved in this case, there was to be no reversion or return under any circumstances of any portion of these homestead exemptions to the insolvent debtors. But "the distinctive test between an assignment and a sale, where another creditor is to be paid off, is that in the former case such other creditor is to receive some

of the property or its proceeds, and in the latter the creditor to whom title is passed takes for himself .the whole property, stipulating to pay the other creditor out of his own means and not out of the property or its proceeds." *Coggins* v. *Stephens,* 73 *Ga.* 414; *Kiser* v. *Dannenberg Co.,* 88 *Ga.* 541 (15 S. E. 17) ; *Johnson* v. *Adams,* 92 *Ga.* 551 (17 S. E. 898).

It further appears in this case (a fact which the writer overlooked in the first opinion handed down) that Ridley-Yates Company, after receiving these transfers, proved their claim against the bankrupts in the bankruptcy court, and received a dividend thereon. In view of this fact, and of the distinction between an absolute conveyance and an assignment, the issue whether these transfers, under the evidence, were absolute sales or assignments, should have been submitted to the jury, if the proper solution of the case depended upon that issue. But we do not think that the right decision of this case depends upon that issue. Bankrupts can prefer their creditors by a transfer of their homestead exemptions, even before they are set aside, as we have shown above. They can prefer creditors by the transfer of choses in action. So the real and controlling question in this case is, whether these transfers, which were intended to prefer these two creditors of the bankrupts, amount, in the light of the evidence, to assignments. An assignment arises where a debtor, generally an insolvent, transfers to another his property, in trust to pay his debts or apply the property upon their payment. *Johnson* v. *Brewer,* 134 *Ga.* 828, 830 (68 S. E. 590, 31 L. R. A.· (N. S.) 332). It is this element of trust which renders a sale or transfer of property an assignment. The bankrupts in making these transfers did not transfer these exemptions to the Ridley-Yates Company in trust to pay their debts, or to apply the property upon their payment. They were preferring it as a creditor. The transferee was to receive these exemptions in the form of money. . The transferee was to apply this money, when received, in payment of its debt in full. By the direction of the transferors, the transferee was to turn over the balance of the fund to Dougherty-Little-Redwine Company on its debt against the bankrupts. We have seen that an insolvent debtor can prefer his creditor by mortgage, and that a mortgage containing a power of sale, which provided that the mortgagee should hold the residue of the proceeds of the sale of

the property under such power subject to the order of the mortgagor, was valid. *Coulter* v. *Lumpkin,* supra. If a debtor, in giving a mortgage with power of sale, can reserve the right to give a subsequent order as to the disposition of the residue of the fund arising from the sale of the mortgaged property under the power of sale in the mortgage, we see no valid reason why he can not give such order or direction at the time the mortgage is executed. This would be nothing more than devoting the surplus to another creditor in preference to other creditors, which we have seen is lawful. *Powell* v. *Kelly,* supra. If a debtor can lawfully, in the case of a mortgage, direct the mortgagee to hold a surplus arising from a sale of the mortgaged property under a power of sale, subject to his order, or can lawfully direct him to turn over such surplus to another creditor of the mortgagor, we see no good reason why he can not direct the transferee, to whom he transfers choses in action to secure a pre-existing debt, to turn over any balance of the fund arising from the collection of such choses in action, after satisfying his own debt, to another creditor of the transferor. Such a transaction does not create a trust in the sense in which a trust renders a conveyance or a transfer an assignment. In the case of a transfer of choses in action to secure debt, the surplus would go to the debtor any way, and he could receive and devote such surplus to the payment of the debt of another creditor to the exclusion of other creditors. Instead of doing this, we can see no good reason why he could not direct his assignee to deliver the surplus to the creditor whom he desired to have such surplus.

The jury in this case found that these transfers were bona fide. The facts of this case do not constitute these transfers assignments. This being so, the court did not err in not submitting to the jury the issue whether they were assignments or not.

*Judgment affirmed. All the Justices concur, except Hill, J., absent because of illness.*