## WALTON v. HORKAN et al.

1. An order to pay to the person therein named the whole of a particular fund operates, not only as between the drawer and payee, but also with respect to the drawee, as an equitable assignment of that fund to the payee, and the same is effectual even as to money yet to become due by the drawee to the drawer upon the performance of an existing contract.
2. If such an assignment be made before the service of a summons of garnishment upon the drawee, the garnishing creditor will be postponed to the assignee, and this is so whether the garnishee had or had not been notified of assignment.
3. The court erred in directing the verdict to which exception was taken.

Argued January 29,—Decided February 28, 1901.

Garnishment and claim. Before Judge Brinson. Richmond superior court. February 8, 1900.

*Hamilton Phinizy*, for plaintiff in error.
*D. G. Fogarty* and *J. R. Lamar*, contra.

LUMPKIN, P. J. The record discloses that W. M. Walton executed and delivered to Maurice Walton an order addressed to the John P. King Manufacturing Company, the body of which read as follows: "Please pay Maurice Walton or order the amount you are due me in full, and oblige." Before anything had been paid on this order, P. D. Horkan, a creditor of W. M. Walton who had instituted against him an action on account for $126.18, caused a garnishment to be served upon the Manufacturing Company, requiring it to answer what it was indebted to W. M. Walton. The garnishee answered, admitting an indebtedness of $180.10. Maurice Walton "interposed a claim to the fund in the hands of said garnishee," and traversed its answer, "alleging said indebtedness was due to him and not to defendant, by reason of defendant having made an equitable assignment of the fund to claimant prior to service of the summons of garnishment." The issue thus made came on to be tried before a jury. The claimant introduced certain testimony, and closed. This testimony was sufficient to establish the following state of facts: On November 30, 1898, the Manufacturing Company gave to W. M. Walton an order for a carload of lumber. He, being already indebted to Maurice Walton about $85, showed him this order from the company and requested him to advance such additional funds as would be necessary

"to get out the lumber," stating that, if he would do this, he (W. M. Walton) would give him an order on the company for the proceeds of the lumber.  To this Maurice Walton agreed, and accordingly W. M. Walton gave to him the above-described order on the Manufacturing Company.  In pursuance of the contract thus made, Maurice Walton advanced to W. M. Walton, on December 1, 1898, $35, and on February 1, 1899, $25.  At the time the order on the company was given, the lumber had not been shipped, and the order was not then dated, but it was agreed that it should be dated when W. M. Walton notified Maurice Walton of the shipment.  After receiving notice of the shipment, he did date the order January 27, 1899.  It was understood that if the proceeds of the lumber amounted to more than the original indebtedness of $85 and the new advances, the "overplus" should be paid by Maurice Walton to W. M. Walton, but "if the proceeds were less than the old debt and advances," W. M. Walton should still owe Maurice Walton "the difference."  Maurice Walton notified the Manufacturing Company by telephone of the fact that he had received from W. M. Walton the order upon it for the proceeds of the lumber.  The price thereof was not due and payable by the company until the lumber should be checked out and its value ascertained.  The superintendent of the company promised to let Maurice Walton know what the value was as soon as the checking out was completed.  Before this was done, the garnishment had been served.  No testimony was introduced in behalf of Horkan. After argument, "the court held that the fund had not been equitably assigned to claimant, and accordingly directed the following verdict:  We, the jury, find for the plaintiff against claimant, traversing answer, and further find fund in hands of garnishee property of defendant and subject to said garnishment."  Thereupon the claimant sued out a bill of exceptions, and by proper assignments of error therein made presented the questions dealt with in the headnotes.

1. The first of these questions is, whether or not upon such a state of facts there was an equitable assignment by W. M. Walton to Maurice Walton of the claim of the former upon the Manufacturing Company for the price of the lumber.  We think there was. In 2 Am. & Eng. Enc. L. (2d ed.) 1055, it is said that: "To constitute a valid assignment of a chose in action, no particular form

of words or form of instrument is necessary.   Any language or act which makes an appropriation of a fund amounts to an equitable assignment of that fund."   On pages 1059, 1060, and 1061, of the same volume, we find the following: "It is a general rule that an order payable out of a particular fund operates as an equitable assignment of the fund, not only as between the drawer and payee, but as regards the drawee also, notwithstanding the order may not be accepted by the latter party.   .   .   In this case it is not essential that the fund assigned should have an actual existence; it is sufficient if it exists potentially.   Thus an equitable assignment may as well be made of a fund to come into the hands of the drawee, by virtue of an agency, as of the money actually in hand." While "a mere possibility is not assignable" (Id. 1026), "money to become due upon the performance of an existing contract   .   . may be assigned in equity."   "Whatever may have been the law formerly, and however such a transaction may be regarded now in a court of law, it is well settled that in equity an assignment of moneys not yet due or earned, but which are expected to be earned in the future under an existing contract, is binding and will be enforced."   See pages 1027 and 1028, and cases cited under note 2, beginning on the former.   The doctrine laid down in the above-quoted extracts was recognized and applied in our case of *Bank* v. *Hartman Steel Co.*, 87 *Ga.* 435.   See the authorities there cited, and also *Haas* v. *Bank*, 91 *Ga.* 307, and note the reasoning of Chief Justice Bleckley in *Jones* v. *Glover*, 93 *Ga.* 484.   In pointing out why the draft under consideration in that case did not of itself amount to an equitable assignment, he said (page 486): "The draft was not drawn expressly on this fund or any other, but purported to be for value received and directed the amount to be charged to account of the drawer."

2. The remaining question is: Was the equitable assignment entitled to priority over the garnishment?   The following from 14 Am. & Eng. Enc. L. (2d ed.) 857–859, furnishes an apt answer: "As a general rule the plaintiff in garnishment proceedings stands in no better position than the defendant does with respect to the indebtedness sought to be reached by the process of garnishment, and the process of garnishment will not hold anything which is not legally and equitably the property of the principal defendant; and therefore it is universally held that an assignment by the defendant

of the claim due to him, irrespectively of whether the assignment is equitable or legal, will take precedence of a subsequent writ of garnishment served upon the debtor at the suit of creditors of the assignor, provided the assignment was in good faith and for a valuable consideration. . . The rule that a prior assignment will take precedence of a subsequent garnishment served on the debtor at the suit of creditors of the assignor applies with equal force where the chose in action is assigned as security, as if the assignment were absolute and the assignor had parted with all his interest, both legal and equitable, in the thing assigned." Indeed, it is not, as between assignor and assignee, essential to the validity of the assignment that notice thereof should be given to the person from whom the debt is owing; and even in the absence of such notice, the garnishing creditor will be postponed to the assignee, when the garnishment was served subsequently to the making of the assignment. See page 861 of the volume last cited, and also 2 Am. & Eng. Enc. L. (2d ed.) 1076; Rood on Garnishment, § 66 et seq.; 2 Shinn, Att. & Gar. § 614, p. 1014; Waples, Att. & Gar. (2d ed.) § 264.

3. It results from the foregoing that the court erred in directing the verdict of which the plaintiff in error complains. As will have been seen, Horkan's claim against W. M. Walton was not sufficient to exhaust the fund in the garnishee's hands, nor was W. M. Walton's actual indebtedness to Maurice Walton equal in amount to that fund. We do not, however, undertake to decide anything with regard to what disposition should be made of the "overplus," whether viewed from one standpoint or the other; for as to this the bill of exceptions presents no point for us to pass upon.

*Judgment reversed. All the Justices concurring, except Simmons, C. J., and Cobb, J., absent.*