### 640. BYCK *et al.* *v.* WEILER COMPANY.

1. The defendant sent to the plaintiff a lambskin coat to be remodeled and repaired; no time was agreed upon for completing the work; when the garment was returned the defendant complained that it did not fit; within a reasonable time the plaintiff offered to remedy the defects in the fit, which offer the defendant refused. *Held,* that the plaintiff had a cause of action for the entire contract price of the repairs.

2. Where, in such a case, there is a plea of total failure of consideration, and a judgment is asked by way of set-off for the full value of the coat, on the ground that the work done on it has made it absolutely worthless, and there is evidence to authorize such a finding, but no evidence whatever from which the jury could infer a mere depreciation in the value of the coat, a new trial will not be granted on account of an instruction to the effect that the burden is on the defendant to show that the coat had been made absolutely worthless.

Appeal, from Fulton superior court—Judge Pendleton. May 28, 1907.

Argued November 12, 1907.—Decided January 15, 1908.

*Arthur Heyman, Lamar C. Rucker,* for plaintiffs in error.

*Ben. J. Conyers, I. S. Hopkins Jr.,* contra.

RUSSELL, J. Mrs. Byck, the defendant, sent to the plaintiff in Cincinnati a lambskin coat to be relined and remodeled, with the following instructions: "I am sending you a lamb coat by express prepaid. Please examine same, and give me an estimate. I want the coat relined and remodeled, and the sable made into an extra piece." The plaintiff replied, "Your Persian lamb coat received, also letter. To remodel your coat and reline and full

sleeves with high storm collar and revers of Persian lamb, to match coat, will cost $75.00. . . To make from your collar and revers a four in hand, cost $7.00. We enclose you measure blank. Please have same filled in by some good tailor or dressmaker. Also, let us know what kind of lining you like." The defendant had the measure blank filled in by a tailor in Atlanta, and sent it to the plaintiff with the following letter: "Enclosed are the measurements which have been taken by a good tailor. Hope they are correct. Please remodel the coat as per letter, viz., coat to be same length, relining with old blue brocade, high storm collar, revers and full sleeves." When the coat was returned to the defendant, she objected that it did not fit, that it was too large in the waist and hips, and that it had been materially shortened. The plaintiff promptly offered to remedy the defects in the fit, by making the coat smaller in the respects indicated; but so far as appears from the record, no offer was made to remedy the alleged shortening the coat. The defendant refused the offer, and the plaintiff instituted suit for the full contract price of the repairs. The defendant relied on the defense that the coat had been made absolutely worthless by the work done on it, and asked, as a set-off, for judgment against the plaintiff for the full value thereof. The jury returned a verdict for the plaintiff, for the full amount sued for; the defendant made a motion for a new trial, the motion was overruled, and she excepted.

At the trial it was admitted by the witnesses for the plaintiff that the measure blank called for a coat 40 inches in the hips, and that the coat was made 43 inches, or three inches larger than the instructions stipulated. The reason given for departing from the instructions in this particular was that it appeared that the defendant had a bust measurement of 38 inches, and the cutter and the fitter were of the opinion that the hip measurement was erroneous, because in all their experince they had never known a woman with bust so large and hips so small. Weiler, the president of the plaintiff company, testified that he had been in the fur business for thirty-six years, and "no woman having a 38-inch bust could have a 40-inch hip." The cutter said, "I have been in the employment of this company and its predecessor about nine years. . I would judge that it would hardly be possible for a person to have a 38-inch bust measurement and only a 40-inch hip meas-

urement. The usual proportion of a woman having a 38-inch bust is a 43-inch hip." There was also an issue as to whether the coat had been shortened. The defendant and her witnesses testified positively that the coat had been made at least two inches shorter; some of the plaintiff's witnesses, on the other hand, testified that the coat had not been shortened at all, while others said that the fur was very much worn at the bottom, and that it was necessary to cut this fur off, in order to make a workmanlike job, and that the coat had been shortened from one half to three quarters of an inch on this account.

The only errors assigned in the motion for a new trial are based on the charge of the court to the jury. The following portion of the charge is assailed as constituting error: "If you believe that the plaintiff remodeled this coat, but that it did not fit according to the terms of the contract, but that it could have been made to fit by a slight alteration by the plaintiff, which would not have in any way impaired the value or appearance of the coat, and that the defendants declined to allow the plaintiff to make that alteration, they having offered to do so, and if you believe further that the coat was made shorter, but that it was substantially the same length, and that wherein it was made shorter it was necessary, in order to make a workmanlike job, to make it from one-half to three-quarters of an inch shorter, on account of the fact that the fur was worn off of the coat at the bottom,—the court charges you that if you find with the plaintiff on both these points, the plaintiff would be entitled to recover." The defendants insist that this charge was error, because, in the first place, under the law, a breach of the contract occurred when the plaintiff returned the coat not fitting to the defendant, and that the plaintiff could not avoid this breach by afterwards offering to remedy said defect; and, in the second place, because by the contract the plaintiff was under an absolute duty to remodel the coat so that it would be the same length, and that it was a breach of the contract to make it from one half to three quarters of an inch shorter, even though it was necessary to do so in order to get rid of the worn-out fur.

The first objection is predicated on the theory that this was an entire contract of bailment, and that full performance by the plaintiff was a condition precedent to a suit on the contract, under

the Civil Code, §2920, which is as follows: "As a general rule, the contract of bailment is an entire contract, and a full performance is a condition precedent to an action upon it." We are cited to the case of Sinclair *v.* Bowles, 32 Rev. R. (Eng.) 589 (9 Barn. & Cress. 92, 4 Man. & Ry. 1, 7 L. J. K. B. 178). In that case the defendant delivered to the plaintiff three chandeliers, under an agreement that they were to be put in a perfect state of repair for 10 pounds. The jury found that the plaintiff had not substantially performed his part of the agreement according to the intent of the parties. The chandeliers had been cleaned and some icicles and drops supplied; one of the arms, which was perfect when taken away, had been broken, and several of the spangles and icicles damaged; and, in one of the chandeliers, the scroll, which had been sent damaged, was brought back in the same condition. The court held that the plaintiff could not recover. The defendant in the case at bar relies also on the case of Mack *v.* Snell, 140 N. Y. 193 (35 N. E. 493, 37 Am. St. R. 534), where the defendant furnished the plaintiff with part of the materials for the manufacture of some shears, to be made according to a sample at an agreed price. The defendant accepted some of the shears before he found that they were not made according to the sample. They were useless, and the defendant refused to accept the remainder of the shears. The court held that the plaintiff could not recover for the work and material furnished in manufacturing the shears, and allowed a counter-claim in behalf of the defendant for the plaintiff's breach of the contract. Both of these cases are distinguishable from the case at bar. In neither of them does it appear that the plaintiff offered, within the time stipulated by the contract for performing the work, to remedy the defects of which complaint was made. In the case now under consideration, the plaintiff promptly offered to remedy the defects in the fit of the coat, so as to make it conform to the wishes of the defendant. It does not appear from the contract that full performance was due by a day fixed and certain, nor that the plaintiff guaranteed to make the coat fit when first tried on. A tailor ordinarily does not guarantee a fit on one trial, and the customer should give him an opportunity to remedy the defects complained of, where such offer is made promptly and prior to the date at which final performance is due. Especially is this true where, as

in the present case, the measurements were not taken by the tailor himself, but by a person selected by the customer. Of course, if the tailor has agreed to have the garment completed by a certain date, and time is of the essence of the contract, he must, as a general rule, have the work completed on the day named; and an offer made subsequently to such date, to remedy the defects, would be too late. But such was not the agreement here. Nor do we think this result should be changed because the tailor departed from the measurements contained in the blank submitted at his request. He asked for these measurements as a guide to his judgment in remodeling the coat. He had a legal right, under the contract, to depart temporarily from the measurements contained in the blank, if in his opinion they were erroneous; to remodel the coat accordingly, and submit it to the defendant. Of course, by doing so, he assumed the risk of having to pay the express charges on the coat to Atlanta and back to Cincinnati, and of having to alter the coat to conform to the wishes of the defendant without additional pay. He chose the latter course, and the only thing which saved him the express charges and the expense of doing the work over again was the defendant's refusal to allow him to complete the work. As already stated, his offer to make the alterations would have to be made within the time prescribed by the contract for performance. Admitting, then, that this was an entire contract, as contended by the defendant; that full performance or its equivalent was a condition precedent to an action by the plaintiff; and that full performance has not taken place, in that the coat was too large in the hips and waist; still the performance of a condition precedent will be excused when its performance has been prevented by the opposite party, or has been waived by him. 9 Cyc. 688, 701; Williams v. Bank of United States, 2 Peters, 96 (4) (7 L. ed. 360). See also *Haralson* v. *Speer,* 1 *Ga. App.* 573 (3) (58 S. E. 142). When, therefore, the coat was submitted to the defendant and it did not fit, this was not a breach of the contract as claimed by defendant's counsel. The offer to make alterations in the coat was not an attempt to avoid the effects of a breach, but an offer to go on and complete performance, and the refusal to allow further performance excused the plaintiff.

It is contended, however, that this charge was error for the

further reason that it did not submit to the consideration of the jury the theory that the defendant's refusal to redeliver the coat to the plaintiff, so that the defects could be remedied, was due to the fact that the plaintiff did not offer to remedy the alleged defect in the length of the coat. Counsel say that under the contract the plaintiff was under an absolute duty to so remodel the coat as that it should be left the same length, and that it would not be a compliance with the contract to shorten it even one half or three quarters of an inch, even though this was necessary in order to get rid of the worn-out fur and in order to make a workmanlike job. If there was any error in this portion of the charge, it was cured by the context and by the charge as a whole. The judge charged the jury several times that the coat was not to be shortened, and that if it was materially or substantially shortened, this would be a breach of the contract by the plaintiff. The jury had the coat, the old lining, and a tape measure out with them during their deliberations, and were authorized, under the evidence, to find, and probably did find, as shown by their verdict, that the coat had not been substantially shortened, if shortened at all. Under the contract, the tailor was to remodel and repair the coat, and it would seem that skilful workmanship required that the worn-out fur be cut off. If the plaintiff in error did not so consider, she should have returned the coat and have allowed Weiler to complete the contract.

2. It is further insisted that the court erred in charging the jury as to the burden of proof. The defendant, in her answer, alleged that the coat had been totally ruined by the work done on it, and that it was absolutely worthless; and she asked for judgment against the plaintiff for the full value of the coat. After stating the issue made by the pleadings, the judge said: "The effect of this plea is to put the burden upon the plaintiff of establishing that it has done its work on this garment according to contract, and the burden is on the defendant to show to your satisfaction that the work done on this garment by the plaintiff has made it worthless, and that it is of no value. The burden of proof means the greater weight of testimony, and while it may not be sufficient to remove every reasonable doubt from the minds of the jury, it is sufficient to incline your minds to one side of the case rather than to the other." Under her plea this was a correct statement of

the burden which the defendant had assumed. It is claimed, however, that this charge took from the consideration of the jury any depreciation in the value of the coat, less than total, which was caused by the work done on it. Inasmuch as the pleadings were that the value of the coat had been destroyed completely, and inasmuch as the evidence introduced by the defendant was introduced for the purpose of showing that the value of the coat had been completely destroyed, and inasmuch as there was nothing in the pleadings or in the evidence upon which the jury could base an estimate of any depreciation in value less than total destruction of value, the court was correct in the charge given. In *Grier* v. *Enterprise Stone Co.,* 126 *Ga.* 17 (54 S. E. 806), it is said: "While 'a plea of total failure of consideration includes partial failure of consideration,' there must be evidence introduced showing the extent to which the consideration has failed, before a verdict can be rendered giving the defendant the benefit of a partial failure. . . When in a given case the only plea is a plea of total failure of consideration, and the evidence for the plaintiff authorizes a finding for the full amount claimed, and the evidence for the defendant authorizes a finding that the consideration has entirely failed, as well as that the article sold was of some value, but there is no evidence as to value other than full value, a new trial will not be granted on account of an instruction to the effect that the jury should find a verdict for the defendant in the event that the article was totally worthless; nor because of an instruction that if they should find the goods were reasonably suited for the purpose intended, they should find for the plaintiff." To the same effect, see *Otis Bros.* v. *Holmes,* 109 *Ga.* 775 (35 S. E. 119) ; *Hinkle* v. *Burt,* 94 *Ga.* 506 (19 S. E. 828) ; *Hornsby* v. *Butts,* 85 *Ga.* 694 (11 S. E. 846). The verdict was amply authorized by the evidence, and there is no reversible error in any of the grounds of the motion for a new trial.        .       *Judgment affirmed.*