SUTTLES *et al. v.* VICKERY *et al.*

752

No. 10234.   November 17, 1934.

*J. Wilson Parker* and *H. A. Allen,* for plaintiffs in error.

*H. T. Golightly* and *William B. Jones,* contra.

Bell, J.   This case arose upon a petition for interpleader filed by a fire-insurance company, the question being whether the proceeds of a policy should be paid to the holders of a security deed, who were also garnishing creditors, or to one holding the policy under an assignment made by the insured after the burning of the property covered by the policy.   After the filing of answers by those asserting the conflicting claims, the case was tried before a jury, and resulted in a verdict in favor of the assignee.   The losing claimants filed a motion for a new trial, which was overruled, and they excepted.   The following statement will be sufficient to illustrate the questions for decision in this court:

On January 1, 1925, R. G. Vickery conveyel to W. I. Suttles and A. B. Suttles a tract of land consisting of 150 acres, to secure

a debt of about $6000. The deed contained a stipulation that the grantor should keep the buildings on the land insured "against loss or damage by fire for an amount not less than none dollars, with loss, if any, payable to" the grantees. Situated on the land was a dwelling-house on which the grantor, on January 2, 1931, procured to be issued to him as the insured a policy of fire insurance in the sum of $800, the house being described "as the property of R. G. Vickery." The policy, however, contained the following clause : "This association shall not be released from any obligation in case of loss or damage, because of liens, mortgages, or defective titles to property; but when it shall appear that insured is not the rightful or legal owner of the property, then shall the insurance, or such part of same as may not belong to the insured, be paid to the proper owner." After the issuance of this policy and in the same month, January, 1931, the dwelling-house was destroyed by fire. From the date of the execution of the deed until the burning of the house and afterwards, the grantor remained in possession and control of the property conveyed by such deed. On March 10, 1931, R. G. Vickery made the following written assignment of the policy to W. C. Vickery, his brother : "$800. For and in consideration of money and labor furnished in the building of the within dwelling-house by W. C. Vickery, the said R. G. Vickery hereby transfers and assigns to the said W. C. Vickery all his interest, rights, and equities under the within policy of insurance to W. C. Vickery, his heirs and assigns." It also appeared from the evidence that on November 15, 1930, R. G. Vickery executed to W. C. Vickery a note for $680, due February 15, 1931, which contained the following recital : "This note was given for money borrowed to remodel house on Suttles place, and must be used to pay for material and labor to go in this house." W. C. Vickery asserted claim to the proceeds of the policy in virtue of the foregoing note and assignment. There was some testimony to show that the note represented an actual transaction in accordance with its tenor, and that the assignment was made in good faith to secure such pre-existing indebtedness, notwithstanding the contention of W. I. and A. B. Suttles, the holders of the security deed, that the note was fictitious, and that the assignment was made to defraud these claimants as creditors of R. G. Vickery.

On February 25, 1931, before the execution of the assignment,

W. I. and A. B. Suttles, filed a suit in equity to foreclose the security deed, and for other equitable relief; in which suit W. C. Vickery was made a party defendant and was "actually served personally with said bill." This suit, however, contained no prayer for a money judgment against W. C. Vickery, and sought no other relief material to the present controversy. This suit proceeded to a judgment of foreclosure and a personal judgment against R. G. Vickery, for about $5000. The judgment was rendered on October 3, 1932, and an execution was promptly issued thereon. W. I. and A. B. Suttles contended further that in view of the terms of the security deed and of the policy, and in view also of the indebtedness secured by such deed and the judgment rendered therefor, they were equitably entitled to the proceeds of the fire-insurance policy, regardless of the alleged fraud between R. G. Vickery and W. C. Vickery. A third contention made by the same parties was that they were entitled to the fund by reason of a garnishment which they caused to be issued against the insurance company on October 11, 1932, on the basis of their judgment against R. G. Vickery. The rights of the parties under this garnishment were brought into question by the bill of interpleader, one of the prayers of which was "that further proceeding upon the said garnishment . . be restrained until the respective claims of the parties could be determined." In support of the garnishment, the plaintiffs therein again attacked the assignment as fraudulent. It appeared, without dispute, that R. G. Vickery was insolvent at the time of executing the assignment.

As indicated above, the verdict was in favor of W. C. Vickery, the assignee. In the motion for new trial filed by W. I. and A. B. Suttles, they alleged that the verdict was contrary to the evidence, and without evidence to support it. They also assigned error on parts of the charge of the court to the jury and on an omission to charge. The instructions complained of were assigned as error. on the ground that they permitted the jury to determine the meaning of the loan deed as to insurance, and of the stipulation in the policy respecting the party to whom the proceeds should be payable; it being contended that the writings were plain and unambiguous, and should have been construed by the court instead of being submitted to the jury for their determination. The matter which it is alleged the court erroneously failed to charge was that the hold-

ers of a security deed are the rightful, proper, and legal owners of the land until the debt is paid, and that such deed "passes the absolute title to such land, subject only to the grantor's right of redemption."

■ The stipulation in the security deed to the effect that the grantor should keep the buildings on the land insured "against loss or damage by fire for an amount not less than none dollars, with loss, if any, payable to" the grantees, does not upon its face show any obligation to keep the buildings insured. If the stipulation could be said to be ambiguous, there was no testimony to explain its meaning; and in the absence of any such evidence it is a necessary inference that the parties used a form of deed which contained a clause for obligating the grantor to obtain insurance in a blank amount, but that the blank space preceding the word "dollars" was filled by the insertion of the word "none." The deed thus, instead of creating an obligation to supply insurance, actually excluded such obligation. Cf. McCaslin v. Advance Mfg. Co., 155 Ind. 298 (58 N. E. 67).

■ The grantor in the security deed, who remained in possession and control of the property, had an insurable interest in the dwelling-house on which he procured the fire-insurance policy to be issued. The house was insured as the property of the grantor. Prima facie, therefore, the right to the proceeds was in him, despite the fact that he had executed the security. *New Jersey Insurance Co.* v *Rowell,* 157 *Ga.* 360 (121 S. E. 414); *Pike* v. *American Insurance Co.,* 160 *Ga.* 755 (129 S. E. 53); *Staten* v. *General Insurance Cor.,* 38 *Ga. App.* 415 (144 S. E. 53); *Ellis Motor Co.* v. *Hancock,* 38 *Ga. App.* 788 (145 S. E. 518); *Ætna Insurance Co.* v. *Foster,* 43 *Ga. App.* 658 (159 S. E. 882); *Home Insurance Co.* v. *Harrison,* 48 *Ga. App.* 705 (173 S. E. 198).

■ The policy contained the following stipulation: "This association shall not be released from any obligation in case of loss or damage, because of liens, mortgages, or defective titles to property; but when it shall appear that insured is not the rightful or legal owner of the property, then shall the insurance, or such part of same as may not belong to the insured, be paid to the proper owner." This clause, without more, did not prevent payment to the insured, where he had an insurable interest. He was entitled to payment unless it appeared that he was "not the rightful or

legal owner of the property." The mere fact that he had executed a security deed did not prevent him from being the rightful or legal owner to the extent that he might obtain insurance in his own right and be entitled to collect the proceeds. It follows that the holders of the security deed had no claim against the proceeds of the policy merely because the deed placed the legal title in them and left the grantor only with possession and the equity of redemption. Since the grantor had an insurable interest and himself paid for the insurance, and it does not appear that he intended to procure the insurance for the benefit of any other person, he and not the holders of the security deed was "the proper owner" for the purpose of collecting this policy. In other words, the condition of the title did not within itself make the grantees the proper owners within the meaning of this policy. They did not procure the insurance, paid nothing for it, and held no obligation from the grantor that he should obtain it. They are in no worse position than if the policy had never been issued, and, in all the circumstances, do not show any legal or equitable right to its proceeds. This statement, of course, excludes the garnishment, which will be considered in a later division.

■ The case might be different if the deed had contained an obligation upon the part of the grantor to supply insurance. American Ice Co. *v.* Eastern Trust & Banking Co., 188 U. S. 626 (23 Sup. Ct. 432, 47 L. ed. 623); 26 C. J. 438, § 588; 14 R. C. L. 1367, § 536. But where a mortgagor, or grantor in a security deed, insures his own interest and pays the premium, and there is no covenant in the mortgage or security deed requiring him to insure the property for the benefit of the holder thereof, the person so obtaining the insurance may claim the entire amount of the proceeds, to the exclusion of such creditor, unless the policy is assigned to the creditor or the insured acted as agent for him in obtaining the policy. Cf. Wheeler *v.* Factors &c. Ins. Co., 101 U. S. 439 (25 L. ed. 1055); Farmers Loan Co. *v.* Penn Plate Glass Co., 186 U. S. 434 (22 Sup. Ct. 842, 46 L. ed. 1234); 26 C. J. 438, § 587; 14 R. C. L. 1365, § 535. It follows that the holders of the security deed were not entitled to the fund in question, either by reason of the condition of the title or by virtue of the stipulations contained in the security deed and in the policy of insurance. This ruling leads to the further conclusion that the judge did not err

as against the movants in the charge by which he allowed the jury to pass upon the meaning of these writings. Since the holders of the security deed could not in any event recover by reason of these instruments, they were not harmed by the instructions whereby, as it is contended, the construction of the writings was submitted to the jury. Nor was it error to fail to charge the jury that the security deed passed the legal title to the property, subject only to the payment of the debt.

■ We next consider the contest between the assignment and the garnishment. The assignee contended that the. policy was transferred to him to secure a note which he held against the assignor. The evidence authorized the inference that the note was not fictitious, but represented a real transaction; and also that the assignment was made and accepted in good faith. In his answer the assignee alleged that immediately after the transfer he gave notice of it to the insurance company. This allegation was admitted in the pleadings filed by the holders of the security deed, who were the garnishing creditors. The assignment was made in March after the fire in January, while the garnishment was not issued until October of the same year. This was a legal as distinguished from an equitable assignment; and although a transfer to secure a pre-existing indebtedness may not, as against a garnishing creditor, involve a sufficient consideration to support an equitable assignment (*Few* v. *Pou*, 32 *Ga. App.* 620, 124 S. E. 372; *Brown Guano Co.* v. *Bridges*, 34 *Ga. App.* 652, 130 S. E. 695; *First National Bank of Thomasville* v. *MacDougald Co.*, 45 *Ga. App.* 853 (3), 166 S. E. 256) , the same is not true of a proper legal assignment. Cf. *Western Union Telegraph Co.* v. *Ryan*, 126 *Ga.* 191 (55 S. E. 21) ; *Central Railway Co.* v. *King Brothers Co.*, 137 *Ga.* 369 (73 S. E. 632) , 5 C. J. 929-31, 971, §§ 90, 91, 162. This must necessarily follow from the provisions of the Civil Code of this State, to wit: "A debtor may prefer one creditor to another, and to that end he may bona fide give a lien by mortgage or other legal means, or he may sell in payment of the debt, or he may transfer choses in action as collateral security, the surplus in such cases not being reserved for his own benefit" (§ 3230) ; and "Persons and firms may make assignments and prefer creditors" (§ 3232). See also *Boykin* v. *Epstein*, 94 *Ga.* 750 (22 S. E. 218). In *Fidelity & Deposit Co.* v. *Exchange Bank*, 100 *Ga.* 619 (2) (28 S. E. 393),

it was held: "Choses in action are not subject to seizure and sale under executions based upon ordinary judgments, and can only be reached by the judgment creditor through a garnishment, or some other collateral proceeding; and inasmuch as such garnishment or collateral proceeding is necessary to fix the lien of the judgment so as to make it effective, an assignment of the chose in action by the debtor before the institution of such collateral proceeding passes to the assignee the property of the debtor in the chose in action assigned, freed from the lien of a general judgment previously rendered against the assignor." Also, in *Walton* v. *Horkan,* 112 *Ga.* 814 (38 S. E. 105, 81 Am. St. R. 77), it was held that if "an assignment be made before the service of a summons of garnishment upon the drawee, the garnishing creditor will be postponed to the assignee; and this is so whether the garnishee had or had not been notified of assignment." While the assignment here in question antedated the garnishment, it was made pending the suit which resulted in the judgment on which the garnishment was issued. But in *Bank of Waynesboro* v. *Ellison,* 162 *Ga.* 657 (3) (134 S. E. 751), it was held that the mere pendency of a suit against a debtor does not extinguish his right to prefer one creditor over another, and that in such case the controlling question is "the existence or non-existence of fraud in the transfer." See also *Conley* v. *Buck,* 100 *Ga.* 187 (2) (28 S. E. 97); *Monroe Mercantile Co.* v. *Arnold,* 108 *Ga.* 449, 459 (34 S. E. 176); *Bigby* v. *Warnock,* 115 *Ga.* 385, 389 (41 S. E. 622, 57 L. R. A. 754); *Cowan* v. *Bank of Rockdale,* 159 *Ga.* 123 (4) (125 S. E. 194). Even "an insolvent debtor may prefer one creditor to another; and to this end he may transfer choses in action as collateral security for a pre-existing debt, the surplus in such case not being reserved for his own benefit." *Silver* v. *Chapman,* 163 *Ga.* 604 (136 S. E. 914).

■ If the evidence for the assignee was true, there was no escape from the conclusion that he was entitled to the fund, the assignment having been executed upon a sufficient consideration and before the issuance and service of the garnishment. The question of fraud was the only issue of fact to be determined. As a general rule, the existence or non-existence of fraud is a matter for solution by the jury, and so it was in the instant case. Under the evidence this court can not say as a matter of law that the assignor was not indebted to the assignee as claimed, or that the as-

signment was made with a fraudulent intent, or that the assignee had reasonable ground to suspect the same, if existing. Whether or not the proceeds of the policy would exceed the amount of the assignee's debt, the plaintiffs in error have asserted no claim to any possible excess. Cf. *Howard* v. *Porter,* 99 *Ga.* 649 (27 S. E. 725) ; *Macon National Bank* v. *Smith,* 170 *Ga.* 332 (2) (153 S. E. 4). The evidence authorized the verdict, and the court did not err in refusing a new trial.

*Judgment affirmed. All the Justices concur.*