**AMERICAN FIRE & CASUALTY CO.,**
Appellant,

v.

**FIRST NATIONAL CITY BANK OF
NEW YORK et al., Appellees.**

No. 7086.

United States Court of Appeals
First Circuit.

July 1, 1969.

F. Castro Amy, San Juan, P. R., with whom A. Castro Fernandez, San Juan, P. R., was on the brief, for appellant.

Wallace Gonzalez-Oliver, San Juan, P. R., with whom Gonzalez, Jr., Gonzalez-Oliver & Novak, San Juan, P. R., was on the brief, for First National City Bank of New York appellee.

Before ALDRICH, Chief Judge, Mc-ENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

This case stems from a dispute between a surety (American Fire & Casualty Co.) and a lender (First National City Bank of New York, hereafter the Bank). The surety was engaged by a subcontractor (Manubenco Enterprises Corp.) to guarantee completion of its work to the general contractor, American P. R. Investment Corp., hereafter APRICO.

The facts, based on a stipulation entered into between surety and lender, are as follows: On November 10, 1961, APRICO entered into a contract with Cooperativa de Viviendas Dr. Lopez Sicardo (owner) for the construction of a housing development. On December 7, 1961, APRICO entered into a subcontract with Manubenco in connection with this housing development. On March 16, 1962, the subcontractor applied to the surety for performance and payment bonds and signed an indemnity agreement in favor of the surety. On March 29, 1962, the surety issued the bonds, which were made extensive to the owner and its lender through a rider.

On March 16, 1962, the subcontractor borrowed $5,000 from the Bank and as security assigned to the Bank progress payment certificate No. 1 which had been approved on the same date by APRICO. Because the subcontractor intended to continue borrowing for the project, it entered into an assignment agreement dated March 21, 1962, by virtue of which the Bank opened a revolving line of credit up to $30,000 in favor of the subcontractor. In return the subcontractor assigned to the Bank all future certificates for

progress payments from APRICO, including retainages.

APRICO was notified of this assignment on March 21, 1962.[1] Before approving the assignment, APRICO suggested two changes: (1) that it be clarified that the certificates assigned and payable would be those acceptable by APRICO; (2) that the payment of the same by APRICO would be made jointly to the subcontractor and the Bank and not to the Bank alone. The document of assignment was then redrafted with the amendments and signed by all the parties on April 26, 1962.

On or about December 17, 1962, the subcontractor declared itself in default and discontinued work. Thereupon, on January 23, 1963, the surety contracted for the services of Rafael Garay for the completion of the subcontract. In addition, the surety paid certain sums for labor and materials and obtained from the subcontractor's laborers and materialmen written assignments of their claims.

In the district court the Bank prevailed on its claim that to the extent of its revolving loan it should be preferred to the surety on payments owed by APRICO to the subcontractor. On appeal, the surety contends that it should be preferred because: (1) its assignment from the subcontractor has priority over that of the Bank, and (2) apart from any question of conventional assignment, by subrogation it stands in the shoes of APRICO, whereas the Bank succeeds only to the rights of the subcontractor.

The surety's argument with reference to the assignments rests on two contentions. A. That contrary to the conclusion of the district court, the first of successive assignees prevails, even though the later assignee first notifies the debtor. B. The surety's assignment was indeed first, i. e., prior in time.

Concerning the legal proposition we may say at the outset that there is a conspicuous lack of harmony among the authorities on this question. Surety's position that the first assignee prevails is supported by the Restatement of Contracts § 173 (1932) subject to qualifications not applicable here and is announced as the majority rule in 4A. Corbin on Contracts § 902 (1951). It was also the federal rule in the pre-Erie case of Salem Trust Co. v. Manufacturers' Finance Co., 264 U.S. 182, 44 S.Ct. 266, 68 L.Ed. 628 (1924) and this apparently was the basis of the Restatement's position. See Corbin, supra, at 616. This position enjoys the support of a wholesome elementary logic, i. e., once an assignor has assigned his chose in action he doesn't have it to assign a second time. But Corbin, id. argues that the rule ranking assignees in the order of notice to the debtor "has very considerable merit from the standpoint of convenience." Moreover, the case support for this position is impressive, see, e. g., Corn Exchange National Bank & Trust Co., v. Klauder, 318 U.S. 434, 63 S.Ct. 679, 87 L.Ed. 884 (1943) (applying Pennsylvania law). This case explicitly repudiates the "general law" of Salem Trust. Id. at 437 n. 8, 63 S.Ct. at 681.

 While the district court was of course bound to follow the law of Puerto Rico, there is no case from that jurisdiction precisely in point. The authorities cited by the district court, however, amply support its position that the law of Puerto Rico is that the assignee who first notifies the debtor of his assignment prevails. See 31 L.P.R.A. §§ 3941, 3942; 10 L.P.R.A. § 1741; Velazquez, Las Obligaciones 259—62 (1964); 10 Manresa, Codigo Civil Espanol 412 (5th ed. 1950).

Moreover, we cannot say that the surety has cited persuasive counter authority. It calls to our attention Borrell y Soler, The Contract of Sales According to the Spanish Civil Code 194–95 (1952). But even that authority suggests that where an assignment is not registered, the assignee with constructive possession is to be preferred. It may be argued that notification to the

---

1. APRICO was never notified of the surety's assignment.

debtor is the best form of constructive possession.[2]

With regard to the surety's factual contentions which seek to give its assignments an earlier date of effectiveness, we say only that we find them to be without merit.

The surety's second major contention is that irrespective of any question of assignment, it is to be preferred to the Bank on ordinary theories of legal subrogation. We may say at the outset that we agree with the surety that it did not waive any other rights it might have as a result of the assignment. The bond is explicit that the assignment does not constitute a waiver of any other rights. We agree further that after the default of the subcontractor, the surety succeeded to the rights of APRICO, the general contractor, whereas the Bank stands in the shoes of the subcontractor.

■ In our recent decision in National Shawmut Bank of Boston v. New Amsterdam Casualty Co., 411 F.2d 843 (1st Cir. 1969), we had occasion to discuss the doctrine of subrogation in some detail. In light of the implications of National Shawmut Bank, supra, we hold that the surety has a superior claim to unpaid progress payments and retainage.

Sixteen of the progress payments in issue were earned and paid out to the assignee bank prior to default of the contractor. We adhere to our holding in National Shawmut Bank, that, except for reasons not germane here, the surety cannot recover such payments from the assignee bank. See, e. g., American Fidelity Co. v. National City Bank of Evansville, 105 U.S.App.D.C. 312, 266 F.2d 910 (1959); Coconut Grove Exchange Bank v. New Amsterdam Cas.

Co., 149 F.2d 73 (5th Cir. 1949). Cf. National Union Fire Ins. Co. of Pittsburgh, Pa. v. United States, 304 F.2d 465, 157 Ct.Cl. 696 (1962).

Five of the progress payments (numbers 17–21) were earned prior to default but they had not been paid. The teaching of National Shawmut Bank, supra, is that the surety has a superior claim to these payments. But for the surety's completion of the work, the obligee on the bond, be he owner or prime contractor, would have been entitled to apply the funds against the cost of completion. It is the surety's performance which frees the funds, and, in our view, the surety is entitled to them.

■ The Bank asserts that the "basic difference" distinguishing this case from National Shawmut, supra, lies in the applicability here of the civil law doctrine of "compensation", 31 L.P.R.A. § 3224.[3] There are two answers to this: first, the conditions of compensation are not met because both debts were not liquidated, 31 L.P.R.A. § 3222, and most importantly, compensation is not binding on a surety, 31 L.P.R.A. § 3223.

The critical question is whether APRICO had the right, upon default of Manubenco, to apply against the costs of completion sums which, although earned and approved, had not been paid. We think it clear that APRICO had such a right, and that being so, these payments were reachable by the surety as subrogee.

■ Finally, we hold that the surety is entitled to the retainage. By its nature retainage is a security for protection against failure of completion. See, e. g., Pearlman v. Reliance Ins. Co., 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190

2. An extended discussion in the dissenting opinion at the circuit court level in Salem Trust Co. v. Manufacturers' Finance Co., 280 F. 803, 806–815 (1st Cir. 1922) suggests that while such a line of reasoning, under the rubric of perfecting title, is the origin of the first-to-notify rule in England, this was merely a misguided extension of a venerable bankruptcy statute. Moreover, the dissenter argues that the early cases speak of inquiry concerning prior assignments as well as of notice to the debtor.

3. "A debtor who may have consented to the assignment of rights made by a creditor in favor of a third person, can not oppose, against the assignee, the compensation [set-off] which should pertain to him against the assignor." 31 L.P.R.A. § 3224.

(1962); Trinity Universal Ins. Co. v. United States, 382 F.2d 317 (5th Cir. 1967).

Reversed and remanded for proceedings consistent with this opinion.